## No. 13,578.

### MR. AND MRS. FRANK BRYANT VS. D. M., THOMAS S. and ALLAN SHOLARS.

#### SYLLABUS.

1.  A person who constructs a building upon his own property with windows in
    it upon the side facing his next neighbor's property, so that the privacy of
    the latter's residence is interfered with, cannot be made by his neighbor by
    injunction to close the windows.   The latter's remedy is to establish screens
    upon his own property.

2.  Where a person in constructing a wooden building on his property with win-
    dows in the side facing his neighbor's property, places it so near the boun-
    dary line that a portion of its weather-boarding crosses that line over upon
    the neighbor's property, the latter cannot on that account force the owner
    by injunction to close the windows in aid of the privacy of his establishment.
    He has the right to force the owner to move the building entirely back on
    his own property.

3.  Article 684 of the Civil Code which authorizes every proprietor adjoining a
    wall to make it a wall in common by reimbursing the owner of the wall one-
    half of the value of the wall and one-half of the value of the soil upon which the wall
    is built, if the person who has built the wall has laid the foundation entirely
    upon his own estate, applies only to "walls" properly so called ; it does not
    refer to enclosures in general ; the Article was from public policy in aid of
    general interests for the safety and solidity of brick or stone buildings, not
    in aid of the right of one neighbor to secure the privacy of his property by
    restriction upon the rights of ownership of his next neighbor.   The side of
    a wooden building is not a "wall".   It may be made to give place to the
    right of the neighbor to have a wall built in lieu of it but under proper cir-
    cumstances and conditions.

4.  One neighbor constructing a wooden structure on or near the line separating
    his property from that of his neighbor, with windows in the side facing the

latter's property, does so as an act of ownership and in subordination to the ultimate exercise by his neighbor of his own right of building. He acquires no right of servitude of view by prescription as against his neighbor's legal rights in the premises.

APPEAL from the Civil District Court, Parish of Orleans—*King, J.*

*Hughes & Favrot* for Plaintiffs, Appellees.

*D. M. and Allan Sholars* for Defendants, Appellants.

The opinion of the court was delivered by

NICHOLLS, C. J. Plaintiffs alleged that they were the owners of certain described property fronting on Philip street. That adjoining the same was a portion of ground forming the corner of Prytania and Philip streets, owned by the defendants. That on the line separating the said property there was a party fence and upon the property of the Messrs. Sholars are located a two-story shed and other sheds. In the two story shed are placed living rooms of some kind in the upper story. That this two-story shed was built directly upon the line of the property of petitioner, and had always been without any openings save one small opening for the admission of light, and through which no view of petitioners' property could be obtained; that the wall that adjoined petitioners' property on this shed was, as petitioner believed and had reason to presume, and had always been, a party wall, but, that in order to avoid any contentions upon the score as to whether or not it was a party wall within the contemplation of law, petitioner had for greater certainty tendered to said Dennis M. Sholars and Allan Sholars, for the Messrs. Sholars, the sum of forty dollars ($40) for one-half the value of this wall, which forty dollars petitioner believed to be a fair compensation for one-half the value of said wall, as she had been informed by competent persons versed in the values of such walls; and that said tender had been refused by the said D. M. and Allan Sholars for the Messrs. Sholars; that she had made the said tender in order to ensure to herself, and the future owner or owners of the properties, the rights of her interests in said wall as fixed by law; that on or about the 28th day of September, 1899, defendants, without lawful authority, or without securing from petitioner permission therefor, undertook to cut into the said wall three openings or windows for the living rooms of the upper story which gave to the defendants a full view upon petition-

er's property and into petitioner's house; and immediately upon their undertaking to cut those openings petitioner made a protest to the defendants concerning the placing of openings in this wall which had been always intact, with the reservation above set forth.

She represented to them the inconvenience that would result to her and to her property, but the defendants persisted in cutting the said openings despite petitioner's protests and objections thereto; that petitioner went further and was willing to make to the defendants concessions for venitilation if they would close from view of petitioner's property the said opening by placing therein such stationary blinds as were suggested by petitioner, through her attorneys; that the defendants, having accepted these conditions with petitioner's attorneys, and having agreed to put in the stationary blinds as set forth by petitioner's attorneys, asked for delay wherein to consumate the agreement amicably and to the satisfaction of petitioner and her attorneys, but, subsequently, informed petitioner's attorneys that they declined to carry out the agreement they had verbally entered into with petitioner's attorneys, and declined to put in the stationary blinds as set forth and previously agreed on by them, and they aggravatingly and unlawfully persisted in maintaining the openings as originally fixed by them, disregarding petitioner's convenience or her rights in and to the said wall.

That, finding all attempts to an amicable solution of the difficulty without avail, petitioner, in an abundance of caution, made to the defendants the tender of forty dollars for one-half the value of said wall as above set forth which tender had been absolutely and irrevocably refused by the defendants. That this tender was made after due notice given to the defendants, on the 29th of November, 1899, and refused by the defendants absolutely; that the damage, inconvenience and injury that resulted to petitioner by the said illegal maintenance by defendants of the openings referred to amounted to more than two thousand dollars ($2000), exclusive of interest; that the injury was irreparable to petitioner's property as well by the right of view that was granted thereon as by the view into the openings made by the defendants.

That a writ of injunction was necessary to protect petitioner's rights in the premises; because petitioner was disturbed in the actual and real enjoyment of her property and of the real rights in and to that property; and because the continuance of the acts of the defendants would result—had already resulted—irreparable injury to petitioner

and to petitioner's property, which said property exceeded in value five thousand dollars.

In view of the premises, she prayed that a writ of injunction issue against defendants, the owners of the property adjoining, as set forth in the petition; first, commanding them to recognize petitioner's rights as half owner of that wall; that in the event that the court should declare that petitioner was not already half owner of that wall, then, commanding the defendants to accept the forty dollars tendered by petitioner, and that it be decreed thereafter to be a party wall owned in common by petitioner and the said defendants. Second, that the defendants be enjoined from maintaining the openings set forth in the petition, and that they be ordered to close the same within such time and terms as might be fixed by the court, and to keep the same closed entirely, placing the said wall in precisely and identically the same condition as found by said defendants at the time they purchased said property, and before they placed the openings there. That the said injunction be maintained and made perpetual; that the defendants be cited to answer and after due proceedings had there be judgment in favor of petitioner, and against the defendants, decreeing the said wall to be a party wall, and commanding the defendants to close the openings as prayed for, and for all general and equitable relief.

After some intermediate exceptions and proceedings unnecessary to recite defendants answered, under benefit and reservation of the exceptions, they had already pleaded, further excepting that the demands in plaintiffs' petition were inconsistent and could not be maintained in the same action. That the action for the half of the wall and the ground on which it was situated should be brought separately from and prior to the action to close the opening and could not be urged by way of injunction. That the injunction compelling defendants to close the opening could not be granted because plaintiffs were not part owners of the wall and the soil on which it rested, and did not seek to be so decreed. Still insisting on all exceptions and motions before filed and not waiving any of their rights thereunder defendants, answering, denied all and singular the allegations contained in plaintiff's petition. Defendants admitted that they were tendered by plaintiffs forty dollars ($40) alleged to be the value of one-half of the wall, but specially denied that the forty dollars ($40) so tendered was the value of one-half of the wall. Defendants averred that, as a consequence of the illegal issuance of the injunction, they had been put to great trouble and expense and

had been compelled to employ attorneys to defend the action; that the expense and damage resulting amounted to seven hundred and fifty dollars ($750).

In view of the premises they prayed that plaintiffs' suit be dismissed at their cost; that the preliminary order of injunction be set aside, and for judgment against plaintiffs for seven hundred and fifty dollars ($750) damages, and for all costs and for general relief.

The court rendered judgment in favor of the plaintiff, Mrs. Sarah Bryant, wife of Frank Bryant, and against the defendants, perpetuating the injunction which had issued in the case to close the opening in the wall owned by the defendants, reserving plaintiff's right at any time to have the two story shed removed entirely from her property.

After this judgment was rendered, but before it had been signed, defendants filed a plea of prescription, averring that they and the authors of their title had been in the open, continuous and uninterrupted possession of the soil upon which the wall in question rested for more than thirty years. They, therefore, set up in bar of plaintiff's right to recover the prescription of thirty years.

The court refused to entertain this plea on the ground that it was as a substantive plea set up too late, but permitted the defendants to set it up in a motion for a new trial.

Defendants applied for a new trial on the ground that the judgment was contrary to law and the evidence in this, to-wit:

First—That the court was without jurisdiction *ratione materiae,* the value of the wall in question, as shown by the pleadings and proof, being eighty dollars ($80), and the one-half ownership of said wall being the issue before the court.

Second—That the defendants and the authors of defendants' title had acquired by thirty years prescription the soil alleged to be the property of plaintiffs on which the wall in part rested, and which, by reason of plaintiff's alleged ownership, was made the basis of the judgment rendered.

Third—That if said soil had not been acquired by defendants and the authors of defendants' title, plaintiffs were not entitled to the remedy afforded by the judgment rendered herein, on the further ground that no such right was granted her by law, and for this reason that she was especially denied such right by Article 488 of the C. C. and the decision of the Supreme Court in 11 Ann. 465, and for the further reason that she was specially given other rights and remedies in the

premises by Article 508 of the C. C. and 26 Ann. page 366, and it was to these she must look for relief.

Fourth—That the judgment was unauthorized, being predicated on an issue not before the court and afforded plaintiffs other and further and different relief than that prayed for or alleged to be her due.

The court overruled the motion and signed the judgment, and defendants appealed.

Plaintiffs moved to dismiss the appeal on the ground that—

First—Because, if $2000 is the amount involved in this appeal, the bond is not such as is required for a suspensive appeal, and, as a suspensive appeal, it should be dismissed. No motion having been made for any other kind of appeal.

Second—If it be claimed that no specific amount was involved, then the Supreme Court has no appellate jurisdiction.

## ON MOTION TO DISMISS.

Had the plaintiff in this case been cast in the District Court, she would have been entitled, under her pleadings and prayer, to an appeal to the Supreme Court. It is a rule, subject to some exceptions, that where a plaintiff, if defeated on an asserted cause of action, would have had a right to appeal to this court, the defendant, if defeated on that same cause of action, would be entitled to a like appeal. The motion to dismiss is refused and the appeal maintained.

## ON THE MERITS.

The plaintiff and defendants own adjoining properties. Defendants' property forms the lower river corner of Prytania and Philip streets and fronts upon the former street. Plaintiffs' property fronts on the lower side of Philip street and runs towards Jackson street. The rear line of defendants' property is the woods side line of the plaintiff's. The contest in this case has arisen from defendants having opened several windows in a wooden structure built on their property, at or near its rear line, which windows enable persons standing at the same to look over plaintiff's property. Plaintiff has a residence upon her property, but there is a wide open space between it and the rear line of that of the defendants'. The structure referred to is described by a witness as "a wooden structure" and as having been in its present position prior to plaintiff's ownership and possession of the property; it

having been built about 1870. One of plaintiff's witnesses states that he had made an examination of the building and gives the following as the result of the same: "I found that this shed belonged to the corner property, which fronts on Prytania street. It is practically on the division line between that property and the Bryant property. I found the foundation of the shed, or rather that corner of the foundation nearer Philip street, to be exactly on the line. I mean the brick foundation. The other corner was two inches on the Sholars property. I found that the wood work or weather boarding extended about an inch beyond the brick, over towards the Bryant side, so that midway of the shed, assuming the shed to be on a straight line from corner to corner, the weather boarding would be exactly on the line; at the end near the street the weather boarding would extend over the Bryant property one inch, at the other end of the shed the weather boarding would be away from the line and over on the Sholars side one inch. I took a plumb line and measured it and I found the wall leaning over on the Bryant side, and that point was, I suppose, twelve or fifteen feet from the ground, just as high as an ordinary ladder would reach. I noticed the windows in it; I saw several openings apparently new windows—just windows of glass, the glass had, I think, been painted or colored in some way, I don't think there were any blinds. The windows were in the second story; the shed is old, probably twelve or fifteen years— perhaps older; it is beginning to show age; there is a little decay in spots. I do not know how many of the openings or windows were in the first half of the wall beginning at Philip street. I did not look at the openings. I am satisfied at least one was there; whether there were two or three I could not say. It seems to me that the openings are about equally distributed along the front of the wall. The projection of the wall or leaning over on the Bryant side increase as you approach Philip street. The Philip street corner is already one inch on Bryant's side. On the corner further from Philip street I should say the top of it would probably be exactly on the line. Between the two ends there seems to be some projection on the Bryant property. The structure is not a brick wall, the foundation is brick and the superstructure is wood; just a brick foundation a few inches below the ground; it is a wooden wall—what would be called a weather boarding wall."

After the windows had been cut, the plaintiff tendered the defendants forty dollars as being one-half of the value of the wall; the object of the tender being to convert the wall into a "party wall." Defendants refused to accept payment.

It seems that the structure had been, at some time prior to the defendants' ownership and possession of the property, put into repair; some repairs had been placed upon the building, and that plaintiff had contributed something to the cost of the repairs.

The building, as a whole, is a wooden house or building belonging to the defendant; evidently intended to have been built entirely upon defendants' property. The pillars of the house are upon it, but a part of the weather boarding runs over the division line and upon plaintiff's property.

Defendants do not contest the right of the plaintiff to force them to move the structure further back upon their own property if any portion of it overlaps the division line, but the plaintiff asserts no such claim in this suit. Plaintiff's object is not to force the building entirely back upon the defendants' property, but leaving it where it is, to insist upon defendants closing the windows which overlook her property and destroy, as she asserts, the privacy of her home. Plaintiff does not pretend to have an intention of erecting a wooden, still less a brick, building on the division line of the properties. The motive and purpose of the suit, as we have said, is the protection of the privacy of her establishment. Has she, in aid of that object, the legal right to insist upon the defendants closing the windows which they have opened in the rear end of their building? It is a misnomer to call it a "wall"; it is nothing more than the side of a wooden house.

Article 668 of the Civil Code declares that "although one be not at liberty to make any work by which his neighbor's building may be damaged, yet every one has the liberty of doing on his own ground whatever he pleases, although it should cause inconvenience. Thus he who is not subject to any servitude originating from a particular agreement in that respect may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's house, because this act occasions only an inconvenience, but not a real damage."

There can be no question that the defendants would have the right to tear this wooden structure down entirely and to rebuild a precisely similar one with the windows in its rear end situated just as are those in the existing building, without the possibility of the plaintiff objecting thereto, nor of the right of the defendants to draw the existing building further back upon their property. If this were done, in what way would the situation of the plaintiff, as to *"privacy,"* have been

bettered. A foot or two more or less backward or forward would not affect the situation at all in this respect. If the defendants' property up to date was a vacant lot and they were to build upon it an open platform in the centre of their lot, so raised as to give a full view of the plaintiff's premises, plaintiff could raise no legal objection thereto, nor could she object to its position being gradually shifted towards the division line of the properties, certainly not until the division line itself was reached. If the reaching of that line would work a change in the defendants' rights, it would not be brought about by reason of any illegal exercise by them of an increased right of view, but in aid of the plaintiff's right to make use of the division line for building purposes. Of course the defendants have no right to cross the line with their building, for that would be an invasion of plaintiff's ownership, and Article 697 of the Civil Code declares that no one shall build galleries, balconies, or other projections on the border of an estate so that they extend beyond the boundary line which separates it from the adjoining estates. Any one violating this provision of the law could be forced to draw back the buildings or projections. If the exercise by the defendants of a legal right to construct a building on their own premises, with windows looking into or over the premises of the plaintiff, would subject the latter to annoyance from that fact their remedy would be to remove the annoyance by means of screens on their own premises (Taylor vs. Boulnarc, 35 Ann. 469).

It is true that Article 696 of the Code is to the effect that "one neighbor cannot, without the consent of the other, open any window or aperture through the wall held in common in any manner whatever, not even with the obligation on his part to confine himself to lights, the frames of which shall be so fixed within the wall that they can not be opened," but this presupposes the existence of a "party wall" held in common, and the side of a wooden house is not a party wall held in common. It is not a "wall" at all; and if it were, it is not held in common between the parties.

Under the heading of "De quels murs la mitoyennement peut être achetée. Dalloz & Vergé, under Article 661 C. N. (Nos. 7 and 8), says: "L'art 661 ne concerne que les murs proprement dits et non pas toutes clotures en general (Civ. C. 15, Dec. 1857, D. P. 58, 1-56). Ainsi le maître d'une cloture en planche peut refuser d'en céder mitoyenneté a son voisin sauf a ce dernier dans les villes et faubourgs a exiger que cette cloture soit remplacée par un mur etabli a frais commun suivant l'art 663."

Conceding for argument that the side of a wooden house or building could be properly called a "cloture en planche," and that in the condition and situation of the properties in the City of New Orleans the owner of a wooden fence could be forced to contribute to the substitution for it of a brick wall at common expense; there has been no such desire expressed and no such demand made upon the defendants.

The plaintiff claims that she has the right to demand of the defendants that the side of one of defendants' wooden buildings, built on or near the division line, be made a "wall" in common by paying to them one-half of its value. We are not of that opinion. The Articles of the Civil Code on the subject of party walls were enacted from public policy in aid of general interests for the solidity and safety of brick or stone buildings and not in aid of the rights of one neighbor to secure the "privacy" of his property by restrictions upon the rights of ownership of another neighbor.

Whenever, if ever, the plaintiff should seek to build a brick or stone building upon her side line, it will be time enough for her to claim a legal right of controlling the defendants' exercise of their right of ownership. We do not understand that plaintiff's rights in this respect stand in any danger of the assertion by the defendants of a right of *servitude of view* acquired by prescription; that right, when so exercised, will be found intact. This subject will be found discussed in Oldstein vs. Building Association, (44 Ann. 496).

For the reason assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and that the injunction which issued herein be and the same is dissolved and set aside, and that plaintiff's demand, as asserted, be rejected at her costs.

The right of the plaintiff to have the two-story building referred to in the pleadings and evidence removed from her property entirely, if it trenches upon it, is reserved.

Rehearing refused.